**Moraima...I am going to tell you one thing, like I told you before...**

FC:    Sí...
       **Yes...**

MC:    Sí tú fueras mi hija...tú sabe...uno tiene que comprender estas cosas...
       **If you were my daughter...you know...one has to understand these things...**

FC:    Sí...
       **Yes...**

MC:    Sí tú fueras mi hija...pues entiende, pues yo,  pues también diría muchachita, pues eh...tú tienes que hacer esto o lo otro,  ¿entiende? Pero como te dije, porque yo veo que el esta... muy grave es lo único...la situación esta grave, se puso demasiado grave, yo no se porque...
       **If you were my daughter...well understand, well I, well I would say young lady, well ah...you have to do this or the other, you understand? But like I told you, because I can see that he is very... very serious is the only thing...the situation is serious, it became very serious, I don't know why...**

FC:    Yo, realmente estoy bien apenada, te estoy llamando porque como tú me estuviste diciendo la última vez que hablamos...tú sabes que yo no estoy trabajando...no tengo dinero, tengo que comprar medicamentos y eso... porque tengo el oído con problemas como tú me habías dicho, de...yo se que el te comentó eso, que...que...me ofreciera algo de dinero, si tú quieres nos juntamos para que hablemos personalmente de eso...porque yo realmente necesito dinero y pero como tú me habías ofrecido algo...porque yo realmente necesito el dinero...
       **I am honestly very sad, I am calling you because you had been telling me the last time we spoke...you know that I am not working...I don't have money, I have to purchase medication and that...I know that he mentioned that, that...that...to offer me some money, if you want we can get together so we can talk personally about this...because I honestly need money and**

3

because you had offered me some...because I honestly need the money...

MC:   Pero, mi amor...como esta la situación ahora con Andrés en prisión otra vez...
      **But, my dear...how the situation is now, with Andres in prison again...**

FC:   Pero, yo trataría de hacer algo, imagínate...porque realmente yo se que ustedes son buenos amigos...
      **But, I would try to do something, imagine...because I honestly know that you are good friends...**

MC:   Tú sabe...
      **You know...**

FC:   [U/I]

MC:   Tú sabe lo que el me dijo primero...
      **You know what he told me first...**

FC:   ¿Qué te dijo?
      **What did he tell you?**

MC:   Pues,  mira Rafael, estoy en prisión otra vez, porque Moraima fue y me denunció, como que yo la estaba llamando...y yo nunca la he llamado, yo nunca la llame Rafael, y...pero Andrés, pero tú estas seguro que tú no  la llamaste, entonces pero como es que esta muchacha va a decir una cosa así, una falsa acusación...
      **Well, look Rafael, I am in prison again, because Moraima went and reported me, something about me calling her... and I have never called her, I never called her Rafael, and...but Andres, but are you sure that you did not call her, but how is it that this young lady is going to say something like this, a false accusation...**

FC:   El, el, el, a dicho cosas así...pero ya a mi no me interesa ningún problema, yo quiero...
      **He, he, he, has said things like that... but I am no longer interested in such a problem, I want...**

4

FC:    Yo, se que ustedes hablaron, porque tú no tenías mi teléfono y tú y yo no nos conocemos personalmente...
       **I know that you'll spoke, because you did not have my telephone and you and I do not know each other personally...**

MC:    Yo, tengo todas las propiedades de el y ahora mismo yo la tengo otra vez...
       **I have all of his property and right now I have it again...**

FC:    Pero yo se que  sí...
       **But I know that it is so...**

MC:    Moraima,  pero yo tengo toda la propiedad de él...
       **Moraima, but I have all of his property...**

FC:    Pero tú a mi no me conoces...el te dió el teléfono.
       **But you do not know me...he gave you the telephone.**

MC:    Sí, sí el me hablo de ti...de ti muchas veces, cuando el me y va a ver al hospital, te acuerda que te dije Moraima no se lo que pasa aquí. El estaba muy entusiasmado...el me habló muy bien de ti, y vuelvo y te digo la verdad, el me hablo muy bien de ti Moraima, yo no te estoy mintiendo...
       **Yes, yes he spoke to me about you...about you many times, when he use to go see me at the hospital, do you remember when I told you Moraima, I don't know what is going on here. He was so enthusiastic...he spoke so well about you to me, and again I will tell you the truth, he spoke very well about you Moraima, I am not lying to you...**

FC:    Y...sí...pero si el  habló bien de mi, ¿por qué hizo lo que hizo? Además  ya yo no quiero recordar eso tipos de cosas, ya...eso es pasado, ya eso,  es pasado, ya eso es pasado,  porque yo se que él te comentó algo porque él sabe bien que yo me notaba muy lesionada, muy dañada en mi cara, cuando él me pegó, y yo me...yo se que si, yo se que el realmente quiere ayudarme, pero yo quiero saber...
       **And...if...but if he spoke well about me, why did he do what he did?  Besides that I no longer want to remember those types of things, alright...that is the past, alright that is the past, alright**

**that is the past, because I know that he mentioned something, because he knows very well, that I looked injured, my face was very affected when he hit me, and I...I know that it is so, I know that he honestly wants to help me, but I want to know...**

MC:     Pero todo esto cambia ahora, porque él está en prisión otra vez, que yo voy hacer, yo no puedo hacer nada con esto, porque todo cambia, todo cambia, entiende yo te llame para ver si las cosas entre ustedes dos, y te recuerda Moraima yo te dije que yo se que tú estás sentida, porque si yo fuera tu padre...

**But all of this changes now, because he is in prison once more, what am I going to do, I can't do anything with this, because everything changes, everything changes, understand, I called you in order to see if things between you two... and do you remember Moraima that I told you that you are hurting, because if I were your father...**

FC:     Todo es posible...todo es posible...
**Everything is possible...everything is possible...**

MC:     Tú sabes que yo soy un hombre bien mayor, yo tengo sesenta y siete años...
**You know that I am a very elderly man; I am sixty-seven years old...**

FC:     No porque tú sabe que yo, no te conozco, yo no te he visto nunca...
**No because you know that I do not know you, I have never seen you...**

MC:     Y, yo estoy enfermo, yo soy...tengo un transplante del corazón...
**I, I am ill, I am...I have a heart transplant...**

FC:     Okay...

MC:     Entiende...pues estas cosas me...ayer mismo yo tuve que dar pasos otra vez, ustedes no saben los daños que ustedes me hacen  los dos, Otra vez tuve que ir a buscar...tuve que ir a tres cortes... cuarteles, tuve que ir a buscar todas sus cosas de él, otra vez tengo aquí la cartera, tarjeta de crédito, y el celular todo, todo lo tengo, yo aquí tuve, que joderme toda la tarde ayer entera, por este señor. Yo no se lo

7

que está pasando, esta…muchacha tan…tan…buena que dijo es…y ahora mete a este muchacho…este hombre a prisión…yo no se lo que pasa aquí ahora…

**Do you understand?.. Well these things …precisely yesterday I had to make moves once more, you'll do not know the harm that you both cause me, once more I had to go get…I had to go to three courts, precincts, I had to pick up all of his things, once more I have here his wallet, credit cards, and the cellular phone, I have everything, here I had to mess up the entire afternoon, because of this man. I do not know what is going on, this young lady so…so…nice that said…and now puts this young man…this man in prison…I do not know what is going on here now…**

FC:    Es que yo no lo metí a prisión…
       **It's that I did not put him in prison…**

MC:    Pues eso fue lo que el me dijo, que tú lo había denunciado y que le había dicho que yo te llame, que el me había mandado a llamarte a ti…
       **Well, that is what he told me, that you had reported him and that you had said that I had called you, that he had, send me to call you…**

FC:    Pero oye mi amor…
       **But my dear listen…**

MC:    Que si bla…bla…bla…
       **That if bla…bla…bla…**

FC:    Oye, escúchame, Rafael, escúchame… tú sabes bien, que tú  y yo no nos hemos visto nunca…
       **Hear me out, listen to me, Rafael, listen to me…you know very well, that you and I have never seen each other…**

MC:    No, no, no…

FC:    No, nos hemos…no nos conocemos…
       **No, we have not…we do not know each other…**

MC:   No, nos hemos visto pero me a hablado mucho de ti, me ha hablado mucho de ti.
      **No, we have not seen each other, but he has spoken so much about you, he has spoken so much about you.**

FC:   Te a hablado de mi...perfecto... pero entonces imagínate, tú...yo estoy segura que el te comento algo, yo se que el quiere ayudarme a mi realmente, yo se que él fue el que te dijo a ti, ayuda la, porque el me quiere, yo se que si, y yo se que él esta...él esta dispuesto...yo se que el esta dispuesto a ayudarme pero...
      **He has spoken about me...perfect...but then imagine, you...I am sure that he mentioned something to you, I know that he honestly wants to help me, I know that he was the one who told you, help her, because he loves me, I know it so, I know that he is ...he is willing... I know that he is willing to help me but...**

MC:   Pero aunque el te pudiera ayudar ahora... ¿Qué va a hacer? Si esta ahora en prisión, otra vez... ¿Verdad?
      **But even if he could help you now...what is he going to do? If he is now in prison, once more...Is that right?**

FC:   ¿Pero, él estaba dispuesto?
      **But, was he not willing?**

MC:   Yo no se...
      **I do not know...**

FC:   Yo se que el estaba dispuesto a ayudarme a mi...
      **I know that he was willing to help me...**

MC:   El te quiere, yo se que el a hablado mucho...yo te digo una cosa el ha hablado muy bien de ti, yo te lo digo, te lo he dicho siempre... el nunca me ha hablado mal de ti...
      **He loves you, I know that he has spoken so much...I will tell you one thing, he has spoken very nicely of you, I will tell you, I have always said it, he has never spoken badly about you...**

9

MC:    No, nos hemos visto pero me a hablado mucho de ti, me ha hablado mucho de ti.
**No, we have not seen each other, but he has spoken so much about you, he has spoken so much about you.**

FC:    Te a hablado de mi...perfecto... pero entonces imagínate, tú...yo estoy segura que el te comento algo, yo se que el quiere ayudarme a mi realmente, yo se que él fue el que te dijo a ti, ayuda la, porque el me quiere, yo se que si, y yo se que él esta...él esta dispuesto...yo se que el esta dispuesto a ayudarme pero...
**He has spoken about me...perfect...but then imagine, you...I am sure that he mentioned something to you, I know that he honestly wants to help me, I know that he was the one who told you, help her, because he loves me, I know it so, I know that he is ...he is willing... I know that he is willing to help me but...**

MC:    Pero aunque el te pudiera ayudar ahora... ¿Qué va a hacer? Si esta ahora en prisión, otra vez... ¿Verdad?
**But even if he could help you now...what is he going to do? If he is now in prison, once more...Is that right?**

FC:    ¿Pero,  él estaba dispuesto?
**But, was he not willing?**

MC:    Yo no se...
**I do not know...**

FC:    Yo se que el estaba dispuesto a ayudarme a mi...
**I know that he was willing to help me...**

MC:    El te quiere, yo se que el a hablado mucho...yo te digo una cosa el ha hablado muy bien de ti, yo te lo digo, te lo he dicho siempre... el nunca me ha hablado mal de ti...
**He loves you, I know that he has spoken so much...I will tell you one thing, he has spoken very nicely of you, I will tell you, I have always said it, he has never spoken badly about you...**

9

FC:   Yo no tengo que hablar nada malo tampoco de el, pero yo se que el
      quería ayudarme a través ti…
      **I don't have anything bad to say about him either, but I know he**
      **wanted to help me through you…**

MC:   Yo no me explico… fíjate…
      **I can't explain this to myself…look…**

FC:   Por…por…todos los gastos…
      **Because…because…all of the bills…**

MC:   Yo no me explico…fíjate…yo no me explico, por eso yo te llamé
      Moraima…como pudo suceder eso, que ustedes están ahora tan
      encontraos…cuando ustedes…
      **I can not explain…look…I can not explain, because of this I called**
      **you Moraima…how could this happen, that you're now**
      **opposed…when you were…**

FC:   Yo se que el quería darme dinero a mi… yo se que el quería darme
      dinero para los gastos médicos…
      **I know that he wanted to give me money…I know that he wanted**
      **to give me money for the medical expenses…**

MC:   Yo puedo…si tú quiere…yo no se…porque ahora todo esto cambia,
      yo no se, si tú quiere yo puedo hablar con el,  pero yo te ofrecí a ti
      también. Te puedo ayudar con el doctor, con los…médico… que se
      arreglaban, no era cosa de el, era cosa mía.
      **I can…if you want…I don't know…because now all of this**
      **changes, I don't know, if you want I can speak to him, but I also**
      **offered you. I can help you with the doctor, with the…**
      **doctor…that it may be resolved, it was not his idea, it was my**
      **idea.**

FC:   Bueno,  pero yo se que algo…
      **Well, but I know that something…**

MC:   Pero,  esto va de mala en peor…
      **But, this is going worse than…**

10

FC:   Yo se que algo te dijo él…mi amor para…para tú llamarme a mi, porque tú no tenia mi número, mi número se que te lo dió él.
      **I know he told you something…my dear for… in order for you to call me, because you did not have my number, I know that he gave you my number.**

MC:   Yo, lo tengo porque yo tengo el celular del ahora mismo, yo tengo el celular de la otra vez, yo tengo…todas sus pertenencias, yo tengo su tarjeta de crédito, su celular…
      **I have it because I have his cell with me right now, I have his cell with me again, I have…all of his belongings, I have his credit card, his cellular phone…**

FC:   Okay, okay, sí tú quiere hablar mas personal…
      **Okay, Okay, if you want to talk more personally…**

MC:   El dinero, todo lo que el dejó, todo, todo…
      **The money, everything that he left, everything, everything…**

FC:   Pero si tú quiere hablar mas personal, nos podemos juntar…no se…
      **But if you want to talk personally, we can get together…I don't know…**

MC:   Pero, en estos momentos ahora mismo…yo no se…él está en prisión que podemos hacer, yo no…yo no puedo hacer nada, él está en prisión otra vez.
      **But, during this moment, right now…I don't know…he is in prison, what can we do, I don't…I can't do anything…, he is in prison again.**

FC:   Bueno…
      **Well…**

MC:   Yo te llame para ver si arreglaban algo entre ustedes dos, para ver si yo pues…y pues, buenos Rafael entonces yo…
      **I, called you in order to see if something was resolved between you two, in order to see if…well I…and well, well Rafael then I…**

11

FC: Tú me comentaste esa vez que esos cargos estaban muy fuertes…
**Last time you mentioned to me that those charges were to serious…**

MC: Claro especialmente, ese cargo de la violación…
**Of course especially, the rape charges…**

FC: Y, yo te puedo ayudar con algo de dinero, lo que yo entendí fue que… que…de acuerdo con lo que yo entendí, fue que si yo quitaba esos cargos, ustedes me van ayudar con algo de dinero.
**And, I can help you with some money, what I understood was that…that…from what I understood, if I were to remove those charges, you'll were going to help me out with some money.**

MC: No…ustedes no… no, yo te dije que yo… te dije a ti, yo no te dije que si tú quitaba los cargos, en ningún momento…
**No…not you'll…no, I told you that I… told you, I did not tell you that if removed the charges, in no moment…**

FC: No quitar lo, no quitar lo, sino como…
**Not removed them, not removed them, but like…**

MC: En ningún momento…yo te dije a ti… Moraima yo encuentro…encuentro que estos cargos están muy fuerte…
**In no moment…I told you…Moraima I find…find that these charges are very serious…**

FC: Sí, tú me lo dijiste…que los cargos eran muy fuertes…
**Yes, you told me…that the charges were very serious…**

MC: Están fuerte… especialmente lo de la violación, entonces yo dije, si yo fuera tú papa… yo también…estuviera muy sentido…
**They are serious…especially the rape one, and so I said, if I were your dad…I also…would be very affected…**

FC: Tú, no me dijiste eso…
**You, did not tell me that…**

12

MC:   Sí, te lo dije…sí, yo fuera tú papa…yo entiendo que tú te sientes mal porque él te pego… y si fuera yo o si fuera yo mismo que me hubieran pegado, yo me siento mal…yo trate de consolarte, para decir te que yo se que necesitas castigarlo, te recuerdas que yo te dije porque él no se puede ir sin castigo…

**Yes, I did tell you…yes, if I were your dad…I understand that you feel bad because he hit you…and if it were me or if it had been me that had gotten hit, I would feel bad…I tried to console you, in order to tell you that I know that you need to punish him, do you remember that I told you that he could not leave without a punishment…**

FC:   Claro…

**Of course…**

MC:   Él te pego, eh…pero lo que se llama assault and battery, assault and battery…

**He hit you, ah…but what is called assault and battery, assault and battery…**

FC:   Él me pego…

**He hit me…**

MC:   Tú tienes lo que… assault and battery, estoy seguro, yo no se los cargos, pero yo estoy seguro…

**You have what's…assault and battery, I am sure, I do not know the charges, but I am sure that…**

FC:   Él me pego y tú sabe que aparte de eso él me violó y tuvo relaciones sin mi consentimiento, el me forzó. ¿Entiende?

**He hit me and you know that aside from that, he raped me and had intercourse without my consent, he forced me. Do you understand?**

MC:   Eso es lo que te dije…yo dije, como ustedes son un matrimonio y esas cosas pasan entre los matrimonios, que…que se yo… y el hombre dice no…tú eres mi mujer, tú eres mi mujer…

**That is what I told you…I told you, like you're a marriage and these things happen among marriages, that…what do I**

13

**know…and the man says no…you are my woman, you are my woman…**

FC:    Incluso yo se que él te había comentado que nos ibamos a casar ahora en este mes…
**I also know that he mentioned to you that we were going to get married this month…**

MC:    Sí, me dijo…me habló…pues me habló muy bien de ti, todito…
**Yes, he told me…he spoke to me…well he spoke very well about you, everything…**

FC:    ¿Te dijo que nos ibamos a casar este mes?…
**Did he tell you we were going to get married this month…?**

MC:    Me dijo…Rafael esta muchacha es muy buena y muy inteligente…
**He told me…Rafael this young lady is very nice and very intelligent…**

FC:    Sí…
**Yes…**

MC:    Y, yo se que ella me quiere…fíjate, yo le dije Andrés…yo, mismo le dije… Andrés, <u>you know…</u> ¿Tú estás seguro? Yo mismo, yo lo cuestioné a el, tú… a Dios… ¿estás seguro? Porque es muy poco tiempo. Yo no se…como tú dices, si esta muchacha viene de Santo Domingo y es abogada, a lo mejor lo que quiere es plantar bandera aquí.
**And, I know that she loves me…look, I told Andres…I, told him myself…Andres, <u>you know…</u> Are you sure? I, myself, I questioned him, you… ah God…Are you sure? Because it is such a short period of time. I don't know…like you say, if this young lady comes from Santo Domingo and is an attorney; probably what she wants to do is establish herself here.**

14

FC:   No, no…eso no porque… tú no sabe. ¿Entiende? Yo soy una persona profesional que yo trabajo en mi país, y yo tenía buen trabajo, yo dejé todo por él, porque el me mandó a buscar en septiembre, porque nos ibamos a cazar ahora en diciembre, y él me hizo que dejara todo en mi país para que yo viniera para acá, y me mando el pasaje incluso…
**No, no…no not that because…you do not know. Do you understand? I am a professional person, that I work in my country, and I had a good job, I left everything for him, because he send for me in September, because we were going to get married now in December, and he made me leave everything in my country in order for me come here, and he also send me the airline ticket…**

MC:   Sí…
**Yes…**

FC:   Pues, entonces esta bien Rafael, si, si, imagínate, pero eh… yo se que tú quería ayudarme.
**Well, it's okay then Rafael, yes, yes, you can imagine, but ah…I know that you wanted to help me.**

MC:   Moraima…yo quería ayudarte cuando eso…porque la cosa…para ver si la cosa se calmaba un poco, yo se que tú…
**Moraima…I wanted to help then…because things…in order to see if things calmed down a bit, I know that you…**

FC:   Pues, tranquilo…entonces…
**Well, be at ease…so…**

MC:   Tú tienes que castigarlo porque sí él te pegó, él no va a salirse con la suya, sí tú lo… sí tú lo denuncias por <u>assualt and battery,</u> tú tienes razón.
**You have to punish him, because if he hit you, he's not going to get away with it, if you…if you report him for <u>assault and battery,</u> you are right.**

FC:   <u>Okay…</u>

15

MC:  Pero yo lo que dije fue, Moraima, todos estos cargos están demasiado... de, de...está muy serio esto, especialmente lo de la violación.
**But, what I said was, Moraima, all of those charges are too much... to...to...this is to serious, especially the rape one.**

FC:  Él lo hizo...él lo hizo...él incluso quería matarme con un cuchillo, él no te contó nada...
**He did it...he did it...he also wanted to kill me with a knife, he did not tell you anything...**

MC:  Fíjate, yo oí al revés... yo oí que tú fuiste la que cogiste el cuchillo, fuiste tú...
**Look, I heard the opposite... I heard that you were the one who took the knife, that it was you...**

FC:  Lo tiré para fuera, porque él lo y va agarrar para pegarmelo...
**I threw it outside, because he was going to pick it up in order to use it on me...**

MC:  Umh...

FC:  Yo, quería saber, ¿qué cantidad me podían dar de dinero?
**I wanted to know, how much money can you give me?**

MC:  Yo, no se de eso... sí tú quiere que yo hable con él en el futuro, eso depende de tí...
**I don't know about that... if you want me to speak to him in the future that depends on you...**

FC:  Bueno, hablate con él...
**Well, then speak to him...**

MC:  Yo entonces...puedo, pero tiene que salir de prisión, yo no puedo hacer nacer, nada mientras esté en prisión. Yo puedo mediar, lo que se llama <u>mediate,</u> yo puedo hacer un intermedio entre ustedes dos, si ustedes quieren arreglar algo entre ustedes, depende de él y de ti...
**I then...can, but he has to come out of prison, I can not do anything, nothing while he is in prison. I can <u>mediate</u>, what is called mediate, I can intervene between the two of you, if you**

FC:   Y, tengo el brazo izquierdo que me duele mucho y el oído, tú sabes, no estoy bien.
      **And, my left arm is hurting a lot and the ear, you know, I am not well.**

MC:   Oh...

FC:   Pero nada, gracias por atenderme Rafael, muchísimas gracias por, por...tomarte este problema  para ti...
      **But nothing, Rafael, thank you for attending to me, thank you very much for, for...making this problem yours...**

MC:   Mi amor...y mira yo...
      **My dear...and look I...**

FC:   Y, hablamos luego, okay...
      **And, we will talk later, okay...**

MC:   Okay, que Dios te cuide...
      **Okay, God take of you...**

FC:   Okay...que pases buenas tarde, bye...
      **Okay...have a good afternoon, bye...**

MC:   Okay...

[End of conversation]

18

<u>Affidavit of Translation</u>

I, <u>Yudelca Mateo,</u> affirm that I am fluent in the English and Spanish languages. I have faithfully transcribed and translate a controlled telephone conversation from Spanish to English, in the case of <u>People vs. Andres Bryan Estrada, Docket # 2007NY091398, furthermore</u> certify that it is a true and accurate translation to the best of my ability.

Date: <u>January 15, 2008</u>

Yudelca Mateo

False statements made herein are punishable as a Class A misdemeanor pursuant to section 210.45 of the penal law.

19

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

Page 1 of 2

| THE PEOPLE OF THE STATE OF NEW YORK | FAMILY OFFENSE |
|---|---|
| -against- | DEFENDANT/VICTIM RELATIONSHIP: |
| **1. Andres Bryan-estrada (M 48)**  816407 | DOMESTIC PARTNER LIVING TOGETHER |
| Defendant. | FELONY ADA GALLUZZO |

Police Officer Denise Vizcaino, shield 16314 of the 033 Precinct, states as follows:

On November 8, 2007, at about 20:30 hours at 625 West 156th Street, New York, New York in the County and State of New York, the Defendant committed the offenses of:

| 1. | PL130.35(1) | Rape in the First Degree (1 count) |
| 2. | PL130.65(1) | Sexual Abuse in the First Degree (1 count) |
| 3. | PL120.05(6) | Assault in the Second Degree (1 count) |
| 4. | PL120.00(1) | Assault in the Third Degree (1 count) |
| 5. | PL120.14(1) | Menacing in the Second Degree (1 count) |

the defendant engaged in sexual intercourse with another person by forcible compulsion; the defendant subjected another person to sexual contact by forcible compulsion; in the course of and in furtherance of the commission and attempted commission of a felony, and of immediate flight therefrom, the defendant or another participant caused physical injury to a non-participant; the defendant, with intent to cause physical injury to another person, caused such injury to another person; and the defendant intentionally placed and attempted to place another person in reasonable fear of physical injury, serious physical injury and death by displaying a deadly weapon, dangerous instrument and what appeared to be a pistol, revolver, rifle, shotgun, machine gun and other firearm.

The offenses were committed under the following circumstances:

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

Page 2 of 2

| THE PEOPLE OF THE STATE OF NEW YORK | FAMILY OFFENSE |
|---|---|

-against-

DEFENDANT/VICTIM RELATIONSHIP:
DOMESTIC PARTNER LIVING TOGETHER

1. Andres Bryan-estrada (M 48)

816407

Defendant.

FELONY
ADA GALLUZZO

Deponent states that deponent is informed by Moraima Reyes, of an address known to the District Attorney's Office, that on November 8, 2007, at about 8:30 pm, informant observed defendant strike her multiple times about the face and head, causing a black eye, bruising, scratches, lacerations, and substantial pain to informant's face and head. Deponent states that deponent is further informed by informant that informant observed defendant reach for a knife and state that he would cut her with said knife. Deponent further states that shortly thereafter, defendant had sexual intercourse with informant by forcible compulsion.

False statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law.

Po Luz
Deponent

11/10/07   1645
Date and Time

ACT 5 Version 4.2.9 Created on 11/10/07 4:40 PM



**DISTRICT ATTORNEY**

OF THE

**COUNTY OF NEW YORK**
**ONE HOGAN PLACE**
**New York, N. Y. 10013**
**(212) 335-9000**

**ROBERT M. MORGENTHAU**
DISTRICT ATTORNEY

September 26, 2008

Eric Williams, Esq.
The Legal Aid Society
49 Thomas Street
New York, NY 10013

<u>People v. Andres Bryan-Estrada</u>
Indictment No. 05863/2007

Dear Mr. Williams:

I am the paralegal for Barbara Hutter, the Assistant District Attorney in charge of the prosecution of the above-mentioned case. Enclosed, please find a copy of People's Certificate of Readiness and the corresponding medical records for this case.

If you have any questions, please feel free to contact ADA Hutter at (212) 335-9588.

Sincerely,

Sarah Cohen
Trial Preparation Assistant
(212) 335-4297



## DISTRICT ATTORNEY
#### OF THE
### COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**ROBERT M. MORGENTHAU**
DISTRICT ATTORNEY

November 19, 2008

Eric Williams, Esq.
The Legal Aid Society
49 Thomas Street
New York, NY 10013

Re: <u>People v. Andres Bryan-Estrada</u>
Indictment No. 05863/2007

Dear Mr. Williams:

I am the paralegal for Barbara Hutter, the Assistant District Attorney in charge of the prosecution of the above-mentioned case. Enclosed, please find a copy of People's Certificate of Readiness.

If you have any questions, please feel free to contact ADA Hutter at (212) 335-9588.

Sincerely,

Sarah Cohen
Trial Preparation Assistant
(212) 335-4297

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 42
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
THE PEOPLE OF THE STATE OF NEW YORK,

        - against -                  DECISION AND ORDER

ANDREW BRYAN-ESTRADA,            Ind. No. 5863/07

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
MAXWELL WILEY, J.:

Defendant's omnibus motion is decided as follows:

    1.  The motion to inspect the Grand Jury minutes is granted.  The motion to dismiss or reduce the charges for legal insufficiency of the evidence, inadequate legal instructions or defects in the proceedings is denied.  I have inspected the Grand Jury minutes and find that they are legally sufficient to support the charges and that the proceedings were properly conducted.

    2.  The application for release of the Grand Jury minutes is denied.

    3.  The motion for discovery and a bill of particulars is granted to the extent provided by the People with leave to defendant to apply to the Court for any additional items unreasonably withheld.

    4.  A Mapp/Dunaway hearing is ordered.

    5.  A Huntley hearing is ordered.

    6.  A Wade hearing is denied since the People do not plan to introduce the testimony of any witness who previously identified the defendant.

    7.  The People are reminded of their continuing duty to supply all Brady material.

    8.  The defense is directed to respond to the prosecutor's demand for reciprocal discovery.

    9.  The Sandoval motion will be heard immediately before trial.

Dated:  March, 2008
       New York, New York

PART 42  MAR 0 5 2008

_____
          MAXWELL WILEY, J.S.C.

**DISTRICT ATTORNEY**

OF THE

**COUNTY OF NEW YORK**
**ONE HOGAN PLACE**
**New York, N. Y. 10013**
**(212) 335-9000**



**ROBERT M. MORGENTHAU**
DISTRICT ATTORNEY

February 26, 2008

Eric Williams
The Legal Aid Society
49 Thomas St.
New York, NY 10013

People v. Andres Bryan-Estrada
Indictment No. 06241/2007 and 05863/2007

Dear Mr. Williams:

I am the paralegal for Matthew Galluzzo, the Assistant District Attorney in charge of the prosecution of the above-mentioned case. Enclosed, please find copies of Affirmations in Response to the Defendant's Omnibus Motions.

If you have any questions, please feel free to contact ADA Galluzzo at (212) 335-3985.

Sincerely,

Stephanie Stern
Trial Preparation Assistant
(212) 335-4296

# POWER OF ATTORNEY

"NOTICE": The powers granted by this document are broad and sweeping.  They are defined in New York General Obligation Law, Article 5, Title 15, Sections 5:1502A through 5:1503, which expressly permits the use of any other or different form of power of attorney desired by the parties concerned.

Know All Men by these Present, which are intended to constitute a GENERAL POWER OF ATTORNEY pursuant to Article 5, Title 15 of the New York General Obligations Law:

That I, *Andres E Bryan* ,

(Insert name and address of the Principal)

*175 Irving Ave #1 Brooklyn, NY 11237* hereby appoint

*Rafael Ramirez*

(Insert name and address of the agent)

*175 Irving Ave #1 Brooklyn NY 11237*

in my name, place and stead in anyway which I myself could do, if I was personally present, with respect to the following matters: *Banking: I would like Rafael Ramirez to be able to withdraw money from my checking account, saving & cd account. Furthermore Credit card*

_____

_____

_____

*Andres E Bryan*

Signature of Principal

Sworn to before me this *31* day of

*December* 200*9*

*[signature]*

Notary Public

ERIC S. WILLIAMS
Notary Public, State of New York
Reg. #02WI6067578
Qualified in Kings County
Commission Expires May 16, 2010

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 42

PART 42 FEB 2 6 2008

THE PEOPLE OF THE STATE OF NEW YORK

-against-

ANDRES BRYAN-ESTRADA,

Defendant.

AFFIRMATION IN RESPONSE
TO THE DEFENDANT'S
OMNIBUS MOTION

Indictment No. 05863/2007

Matthew Galluzzo, an attorney admitted to practice before the Courts of this State, affirms under penalty of perjury that:

1.    I am the Assistant District Attorney in New York County assigned to this case and am familiar with its facts.

2.    This affirmation is submitted in response to the defendant's omnibus motion in which the defendant seeks inspection of the Grand Jury minutes and the dismissal of the indictment, a bill of particulars, pretrial discovery, suppression of statements, suppression of identification testimony, suppression of physical evidence, a Sandoval hearing, and in support of the People's request for reciprocal discovery.

PEOPLE'S RESPONSE TO THE DEFENDANT'S MOTION TO
INSPECT THE GRAND JURY MINUTES AND TO DISMISS THE INDICTMENT

3.    The People consent to the Court's in camera review of the Grand Jury minutes.  Inspection will reveal that the evidence before the Grand Jury amply supports the offense(s) charged, that the Grand Jury was properly instructed on the law, and that the integrity of the proceedings was unimpaired. The People deny all allegations to the contrary and oppose disclosure of the Grand Jury minutes to the defense.  The issues raised in the defendant's motion are straightforward, and disclosure is not necessary to their resolution.  CPL §210.30(3).

PEOPLE'S RESPONSE TO THE DEFENDANT'S
REQUEST FOR A BILL OF PARTICULARS

4.     The facts set forth in the indictment, which was previously served upon defendant, provide

all the particulars to which the defendant is entitled. See CPL §200.95. They specify "the substance of

defendant's conduct ... which the People intend to prove at trial on their direct case ...."  The other

information requested is evidentiary detail beyond the scope of a bill of particulars. See, People v.

Davis, 41 N.Y.2d 678, 680 (1977) ("[a] bill of particulars serves to clarify the pleading; it is not a

discovery device"). Accordingly, defendant's motion for further particulars should be denied.


PEOPLE'S RESPONSE TO THE DEFENDANT'S
MOTION FOR PRETRIAL DISCOVERY

5.     The Voluntary Disclosure Form ("VDF") provides all of the pretrial discovery to which

the defendant is entitled.   As explained more fully below, the other items the defendant seeks are not

discoverable. See, People v. Colavito, 87 N.Y.2d 423, 427 (1996) (items not enumerated in CPL §240

are not discoverable as a matter of right unless constitutionally or otherwise specially mandated); See,

Matter of Constantine v. Leto, 77 N.Y.2d 975 (1991); Matter of Miller v. Schwartz, 72 N.Y.2d 869, 870

(1988) (discovery matters are "regulated by statute"; thus where a defendant has no statutory right to

pretrial discovery, the defendant request should be denied).


6.     The defendant seeks statements that the defendant made to persons other than law

enforcement officials or their agents.    Such statements and information related to them are not

discoverable. See CPL §240.20(1)(a).


7.     The defendant requests prior statements of the People's witnesses.   These statements are

not discoverable at this time. See People v. Allen, 108 A.D.2d 601, 602 (1st Dept. 1985) ("[t]here is no

requirement that the People furnish Rosario material to a defendant prior to commencement of trial").

They will be provided to the defendant to the extent and at the time prescribed by law. See CPL §§240.44(1) and 240.45(1)(a).

8. The defendant requests numerous police reports. These reports are not discoverable at this time. See CPL §§240.20 and 240.45.

9. The defendant requests the personnel files of potential police witnesses. These files are not discoverable absent a showing of "some factual predicate which would make it reasonably likely" that the files contain impeachment material. See People v. Gissendanner, 48 N.Y.2d 543, 550 (1979); Civil Rights Law §50a. No such showing has been made in this case.

10. The defendant requests information regarding potential police witnesses and their investigative activities. This information is beyond the scope of pretrial discovery.

11. The defendant requests the names and addresses of the People's non-police witnesses. A witness list is not discoverable under CPL §240.20 and is not "other property" under CPL §240.40.

12. The defendant requests the dates of birth and/or criminal records of the People's non-police witnesses. These materials are also not discoverable at this time and will be provided as prescribed by law. See CPL §§240.44(2) (3) and 240.45(1) (b) (c).

13. The defendant requests evidence tending to impeach the People's non-police witnesses. Mere impeachment evidence is not the proper subject of pretrial discovery. See CPL §§240.20, 240.40.

14. The defendant requests exculpatory material within the meaning of Brady v. Maryland, 373 U.S. 83 (1963). The People are aware of their continuing duty under Brady to disclose exculpatory evidence to the defense and will honor that obligation.

3

## PEOPLE'S RESPONSE TO THE DEFENDANT'S
## MOTION TO SUPPRESS STATEMENTS

15.   As the VDF indicates, the People intend to offer in their direct case at trial statements that the defendant made to a law enforcement officer. The People submit that the defendant's statements were lawfully obtained and deny all allegations to the contrary.

## PEOPLE'S RESPONSE TO THE DEFENDANT'S
## MOTION TO SUPPRESS IDENTIFICATION TESTIMONY

16.   The People do not intend to introduce at trial testimony of any witness who previously identified the defendant. A Wade hearing is therefore unnecessary.

## PEOPLE'S RESPONSE TO THE DEFENDANT'S
## MOTION TO SUPPRESS PHYSICAL EVIDENCE

17.   As the VDF indicates, the People intend to offer at trial certain tangible evidence. The People submit that such evidence was lawfully obtained and deny all allegations to the contrary.

## PEOPLE'S RESPONSE TO THE
## DEFENDANT'S REQUEST FOR SANDOVAL HEARING

18.   The People respectfully request that this matter be deferred for consideration by the trial judge. Immediately prior to the commencement of trial, the People will provide notice of prior uncharged criminal, vicious, or immoral acts that the prosecutor intends to use at trial to impeach the credibility of the defendant. See CPL §240.43.

## PEOPLE'S REQUEST FOR
## RECIPROCAL DISCOVERY

19.   Pursuant to CPL §250.20, the People hereby demand that the defendant supply (a) the place or places where the defendant claims to have been at the time of the commission of the crime, and (b) the names, residential addresses, places of employment and addresses thereof of every alibi witness upon whom the defendant intends to rely to establish the defendant's presence elsewhere than at the scene of the crime at the time of its commission.

4

20.    More than 30 days have elapsed since the defendant pleaded not guilty to the indictment and the defendant has not served notice of an intention to present psychiatric evidence at trial. Accordingly, the defendant should be precluded from presenting such evidence. See, CPL §250.10(2).

Wherefore, it is respectfully requested that, except as consented to herein, the defendant's motion should be denied.

Respectfully submitted,

Matthew Galluzzo
Assistant District Attorney
(212) 335-3985

Dated:          New York, New York
                February 25, 2008

5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

ANDRES BRYAN-ESTRADA,

Defendant.

AFFIRMATION IN RESPONSE TO THE DEFENDANT'S
OMNIBUS MOTION

Indictment NO. 05863/2007

Robert M. Morgenthau
District Attorney
New York County
One Hogan Place
New York, New York 10013
(212) 335-9000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -

THE PEOPLE OF THE STATE OF NEW YORK

        -against-

ANDRES BRYAN-ESTRADA,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

THE GRAND JURY OF THE COUNTY OF NEW YORK, by this indictment, accuse the defendant of the crime of **RAPE IN THE FIRST DEGREE**, in violation of Penal Law §130.35(1), committed as follows:

The defendant, in the County of New York, on or about November 8, 2007, engaged in sexual intercourse with Moraima Reyes by forcible compulsion.

SECOND COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuse the defendant of the crime of **ASSAULT IN THE SECOND DEGREE**, in violation of Penal Law §120.05(6), committed as follows:

The defendant, in the County of New York, on or about November 8, 2007, in the course of and in furtherance of the commission and attempted commission of a felony, and in the immediate flight therefrom, caused physical injury to Moraima Reyes, who was not a participant in the crime.

THIRD COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuse the defendant of the crime of **SEXUAL ABUSE IN THE FIRST DEGREE**, in violation of Penal Law §130.65(1), committed as follows:

The defendant, in the County of New York, on or about November 8, 2007, subjected Moraima Reyes to sexual contact, to wit, his penis to her vagina, by forcible compulsion.

ROBERT M. MORGENTHAU
District Attorney

GJ #7-206

Filed:

No.

WAIVED

2007NY085216

THE PEOPLE OF THE STATE OF NEW YORK

-against-

ANDRES BRYAN-ESTRADA,

Defendant.

INDICTMENT

RAPE IN THE FIRST DEGREE, P.L. §130.35(1)
ASSAULT IN THE SECOND DEGREE, P.L. §120.05(6)
SEXUAL ABUSE IN THE FIRST DEGREE, P.L. §130.65(1)

ROBERT M. MORGENTHAU, District Attorney

A True Bill

Foreman

Matthew Galluzzo
Trial Bureau 40

ADJOURNED TO PART 70 ON 12/20/2007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 42

---

THE PEOPLE OF THE STATE OF NEW YORK : NOTICE OF OMNIBUS
                MOTION

       -against-       :

Andres Byran-estrada,       : Indictment No. 05863/07

      Defendant.      :

---

PERSONS:

   PLEASE TAKE NOTICE, that upon the annexed affirmation of Eric S. Williams,

Esq., an attorney duly admitted to practice law, the annexed exhibits and the prior

proceedings herein, the undersigned will move this Court at Part 42, on January 30, 2008

at 9:30 A.M., or as soon thereafter as counsel can be heard for an order:

   1. Inspection of the Grand Jury minutes by the Court, pursuant to CPL § 210.30 (1) and (2), Dismissal of the indictment, pursuant to CPL §§ 210.20, 210.30, 210.35 on the grounds that the evidence presented to the grand jury was legally insufficient to support the charges contained in the indictment, the grand jury proceeding was defective, or in the alternative, Reduction, pursuant to CPL § 210.20 (1-a), of the charges contained in the indictment to lesser included offenses, in the event that the evidence presented to the grand jury was not legally sufficient to establish the greater charges but sufficed to establish those lesser included offenses.

   ~~2. Motion to Release Grand Jury Minutes.~~

   3. Compelling Discovery pursuant to C.P.L. §240.40.

   4. Compelling a Bill of Particulars pursuant to C.P.L. §§200.95(5) and 100.45.

   5. Precluding the use of certain evidence for failure to comply with the Discovery Demand and Request for a Bill of Particulars. C.P.L. §200.95(5); C.P.L. §240.70(1).

   6. Suppressing any and all statements allegedly made by defendant or, in the alternative, directing the holding of a Huntley/Dunaway hearing. C.P.L §710.20(3).

   7. Suppressing any and all physical evidence recovered from the defendant, and any other tangible or testimonial fruits of the illegal search and seizure of the defendant, or in the alternative, directing the holding of a Mapp/Dunaway hearing. C.P.L. §710.20(1); C.P.L. §710.60.

8. Suppressing any and all testimony regarding identification of the defendant, or in the alternative, directing the holding of a Wade/Stovall/Dunaway hearing. C.P.L. §710.20(6). C.P.L. §710.60.

9. Precluding the prosecution from introducing evidence of statement or identification evidence at trial. C.P.L. §710.30(3).

10. Precluding at trial the use of the defendant's prior criminal history or prior uncharged criminal, vicious, or immoral conduct.

11. Reserving to defendant the right to make additional motions as necessary.

And for such other relief as this Court may deem just and proper.

DATED:  NEW YORK, NEW YORK
        January 30, 2008

YOURS, etc.

TO:    ROBERT MORGNTHAU              Steve Banks, Esq.
       District Attorney              Attorney for the Defendant
       New York County               The Legal Aid Society
                                      49 Thomas Street
                                      New York, New York 10013


       ALAN J. MURPHY                 Eric S. Williams, Esq.
       Clerk, Supreme Court           of Counsel
       New York County               (212) 298-5260

## MOTION TO INSPECT GRAND JURY MINUTES, DISMISS THE INDICTMENT, <u>OR IN THE ALTERNATIVE REDUCE TO LESSER-INCLUDED CHARGES</u>

6. Mr. Byran-estrada respectfully requests that this Court inspect the Grand Jury minutes and dismiss the indictment, or in the alternative, reduce the charges therein to less-included charges, pursuant to Article 210 of the Criminal Procedure Law, on the grounds that the evidence before the Grand Jury was legally insufficient to establish the commission of the charges or any lesser-included offense.

7. Pursuant to CPL § 210.20(1), the defendant further requests that this Court dismiss the indictment upon inspection of the Grand Jury minutes if the Court determines that:

(a) the indictment or any count thereof is defective, within the meaning of CPL § 210.25.

(b) the evidence before the Grand Jury was not legally sufficient to establish any of the offenses charged or any lesser-included offense.

©) the Grand Jury proceeding was defective, within the meaning of CPL § 210.35.

(d) the indictment does not conform to the requirements of CPL § 200.50 regarding form and content.

(e) the indictment does not conform to the requirements of Article 190 of the Criminal Procedure Law as to:

(I) the rules of evidence, and

(ii) the legal instructions or charge by the Assistant District Attorney, or the lack of such necessary legal instructions or charge as required by law.

(f) there exists some other jurisdictional or legal impediment to the conviction of the defendant for the offenses charged

8. Alternatively, the defense further requests that this Court reduce any and all counts of the indictment pursuant to CPL § 210.20(1-a).

## MOTION TO RELEASE GRAND JURY MINUTES

9. Pursuant to CPL § 210.30, Mr. Byran-estrada requests that this Court release the Grand Jury minutes in its entirety to defense counsel.

10. This Court has the authority to release the Grand Jury minutes after it has read them so as to enable defense counsel to provide the Court with concise and accurate oral arguments in connection with this motion to dismiss or reduce the charges. Mr. Byran-estrada also requests that this Court permit defense counsel to examine the charges given to the Grand Jury.

## MOTION TO COMPEL DISCOVERY

11. Attached to and made a part of this Omnibus Motion the defendant's Demand to Produce pursuant to C.P.L. §240.

12. Should the prosecution within fifteen (15) days of the filing of the Demand to Produce, fail to respond in writing or, without justification or good cause, does not comply or only complies in part with defendant's demand to produce, defendant moves in advance for an order compelling disclosure of the information requested. See C.P.L. §240.35, §240.40(1) and §240.70.

13. All of the information requested in the Demand to Produce is material and essential to the adequate preparation of a defense and to avoid unnecessary delay at trial. The information is within the knowledge and control of the District Attorney's office

and/or its witnesses. Moreover, the production of these materials would not place an unreasonable burden on the District Attorney's office. And importantly, the defense cannot obtain the requested information or property through any other means.

## MOTION TO COMPEL A BILL OF PARTICULARS

14. Attached to and made a part of this Motion is the defendant's Request for a Bill of Particulars pursuant to C.P.L. §§ 200.95(5) and 100.45.

15. Should the prosecution fail, without justification or good cause, to comply, in whole or in part, to the Request for a Bill of Particulars, defendant moves in advance for an order compelling disclosure of the information requested. See C.P.L. §§200.95(5) and 100.45.

16. All of the information requested in the request for a Bill of Particulars is necessary and essential to the preparation of the defense and to avoid delay once trial begins. The defendant and defense counsel have no independent means of obtaining precise information as to the claims advanced by the District Attorney. In addition, the complaint contains only vague and conclusory allegations. The complaint, therefore, does not contain any of the particulars requested and, as a result, lacks the specificity necessary to inform Mr. Byran-estrada of the exact nature of the charges.

17. Moreover, none of the requested particulars are evidentiary in nature, nor will they reveal <u>how</u> the prosecution intends to prove the alleged facts.

18. The defendant is requesting only that the prosecution reveal what facts it intends to prove at trial. The accusatory instrument does not adequately inform defense counsel of the factual basis underlying the conclusory allegations of the crimes charged.

Defendant demands and is entitled to be informed of the specific facts underlying each element of each of the crimes charged. People v. Iannone, 45 N.Y.2d 589 (1978).

19. Consequently, the defense requests that this court order the prosecution to reveal the factual information requested in the attached Bill of Particulars.

## PRECLUSION AS RELIEF FOR FAILURE TO COMPLY WITH DISCOVERY DEMANDS AND THE REQUEST FOR A BILL OF PARTICULARS

20. Should the prosecution fail to timely serve written refusal to comply with the Demand to Produce and Request for a Bill of Particulars setting forth the grounds for its refusal, or if the court is satisfied that the prosecution has not shown good cause or justification for such refusal, the court must order the prosecution's compliance with defendant's requests. See C.P.L. §240.40(1) and §200.95(5).

21. In the event that the prosecution fails to comply with a court ordered Demand to Produce and/or the Request for a Bill of Particulars, the defense moves in advance for an order precluding the District Attorney from calling any witness or introducing any evidence related to the information sought in the Demand to Produce and/or Request for a Bill of Particulars. See C.P.L. §§200.95(5) and 240.70(1).

## SUPPRESSION OF STATEMENTS

22. The District Attorney's office has served notice pursuant to C.P.L. §710.30(1)(a) that it will seek to introduce at trial statements allegedly made by the defendant.

23. The defendant now moves to suppress all noticed statements that the defendant allegedly made on the grounds that such statements were obtained in violation

of the defendant's rights under the Fourth, Fifth and Fourteenth Amendment to the United States Constitution and Article I §6 of the New York State Constitution and were involuntarily made within the meaning of C.P.L. §60.45.

24.  The defendant also asserts that the defendant's arrest was unconstitutional, in that at the time of the defendant's arrest, the defendant was not engaged in any unlawful behavior.  Dunaway v. New York, 442 U.S. 200 (1979); People v. DeBour, 40 N.Y.2d 210 (1976).  Mr. Byran-estrada was merely going about his business in the vicinity of 625 West 156th Street, when he was summarily seized by the police.  Nothing about Mr. Byran-estrada's appearance or behavior that day would have given the police cause to approach him let alone affect a forcible seizure.  Furthermore, there were no suspicious bulges on Mr. Byran-estrada's person nor did Mr. Byran-estrada possess any contraband in open view.  Any statements elicited in these circumstances must be suppressed as the fruit of defendant's illegal arrest.  Wong v. United States, 371 U.S. 471, 485 (1963); Brown v. Illinois, 422 U.S. 590 (1975); Dunaway v. New York, 442 U.S. 200 (1979).

25.  To uphold the seizure and interrogation of Mr. Byran-estrada in this case, the People must establish that the arresting officer possessed the requisite probable cause to effectuate an arrest and subsequent interrogation of the defendant.  Where the officer makes a warrant-less arrest without personally observing a crime, the Court applies the two-prong Aguilar-Spinelli test to determine if the officer possessed sufficient information for probable cause.  See Spinelli v. U.S., 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964); People v. Parris, 83 N.Y.2d 342 (1994); People v. Rodriguez, 52 N.Y.2d 483 (1981).  The People must establish that the informant to the arresting officer if any was reliable and had a "basis of knowledge" of the facts to accuse

Mr. Byran-estrada of the crime. See e.g., Parris, 83 N.Y.2d at 349-50; Rodriguez, 52

N.Y.2d at 489-90.

26. To establish the basis of knowledge prong of Aguilar-Spinelli, the People

must establish either that the informant personally observed the crime, or that the officer

corroborated the informant's story with facts directly related to the crime such that

personal knowledge may be inferred. People v. Bigelow, 66 N.Y.2d 417, 424 (1985);

Rodriguez, 52 N.Y.2d at 492-93. First, where the informant did not observe the crime,

the Court has held that the informant lacks a "basis of knowledge" as required by

Aguilar-Spinelli. Parris, 83 N.Y.2d at 350 (where "eyewitness" did not observe crime,

witness lacked a basis of knowledge). Bigelow, 66 N.Y.2d at 424 (held no "basis of

knowledge" where informant lacked personal knowledge); People v. Mullins, 137 A.D.2d

227, 231 (3rd Dept. 1988) (reversing conviction where warrant lacked allegation to

establish basis of knowledge prong); People v. Murray, 131 A.D.2d 885, 887 (2nd Dept.

1984)(where informant did not personally observe crime, search and seizure held

unlawful).

27. Second, where the officer fails to corroborate the informant's story with facts

directly related to the crime, the Court has held that the informant lacks a basis of

knowledge as required under Aguilar-Spinelli. Bigelow, 66 N.Y.2d at 424 (where

officer's observations of defendant capable of innocent interpretations, search and seizure

held unlawful); Murray, 131 A.D.2d at 887 (corroboration of facts capable of innocent

interpretation insufficient to uphold search and seizure).

28. Here, the People cannot fulfill the two-prong test of Aguilar-Spinelli. Thus,

any alleged statements made by the defendant must be suppressed. At the time the

arresting officer seized and interrogated Mr. Byran-estrada, the officer did not personally

observe and criminal conduct by Mr. Byran-estrada. Thus, the People must establish that the officer was informed by one who is reliable and had a basis of knowledge of the alleged crime. However, upon information and belief no one who personally observed the alleged crime provided the officer with sufficient information to establish probable cause before the officer arrested and interrogated Mr. Byran-estrada. Furthermore, the officer did not corroborate any information he received with fats directly related to the alleged crime until after the officer arrested and interrogated Mr. Byran-estrada. Thus, the officer lacked probable cause to arrest Mr. Byran-estrada and to interrogate him incident to the arrest.

29. Defendant further asserts that the statements made were involuntary as they were elicited by coercion and the force of police authority. Defendant is not required to make any other specific factual allegations as to the involuntariness of these statements. See C.P.L. §§710.20(3); 710.60(3)(b).

30. The defendant also contends that these statements were obtained pursuant to police questioning, while the defendant was in police custody and prior to a proper advisement of the defendant's constitutional rights. Miranda v. Arizona, 384 U.S. 435 (1966).

31. For the reasons stated above, defendant requests that all statements sought to be introduced as evidence be suppressed and, in the alternative, that a hearing be ordered for the purpose of determining the propriety of defendant's request that the statements for which notice was properly served be suppressed. People v. Huntley, 15 N.Y.2d 72 (1965).

## SUPPRESSION OF PHYSICAL EVIDENCE

32. The defendant moves to suppress the physical evidence seized in this case (including a knife) on the grounds that he was searched and seized in violation of the defendant's federal and state constitutional rights. U.S. Const., Amend. 4 and 14; N.Y. Const. Art 1, Sec.12; Dunaway v. New York, 442 U.S. 200 (1979); Mapp v. Ohio, 367 U.S. 643 (1961). In the alternative the defendant requests a hearing on the issues raised.

33. Mr. Byran-estrada has standing to contest the search because Police Officer Denise Vizcaino, shield #16314, says that the defendant was in possession of the above-mentioned property when he was seized. People v. Sierra, 179 A.D.2d 601 (1st Dept. 1992); People v. Sutton, 91A.D.2d522 (1st Dept. 1982). Mr. Byran-estrada avers that he was not in possession of the property as charged in the complaint. Specifically, Mr. Byran-estrada avers that Police Officer Denise Vizcaino, shield # 16314, did not recover the items from his person and thus was not in possession of the items. Mr. Byran-estrada also alleges that there was no reason for a stop.

34. Mr. Byran-estrada has not been provided with police reports or other Rosario material that may be necessary to support suppression of physical evidence, the defendant should therefore not be denied a Mapp hearing on the grounds that the defendant is unable to give precise factual averments in support of this motion. People v. Mendoza, 82 N.Y.2d 415.91993); see also People v. Landy, 59 N.Y.2d 369, 374; People v. Gruden, 42 N.Y.2d at 218.

35. Nonetheless, based on the limited information thus provided to defense counsel, on November 8, 2007, Mr. Byran-estrada was in the vicinity of 625 West 156th Street. At the time of this seizure, Mr. Byran-estrada was not behaving in an erratic and unsafe manner. According to the Voluntary Disclosure Form (VDF), the police

recovered property from his person and from his home. At that time Mr. Byran-estrada was summarily seized for no apparent reason. At the time of this seizure, Mr. Byran-estrada was merely minding his own business. There was nothing about Mr. Byran-estrada's appearance or behavior that day that would have given the police reason to approach him, let alone forcibly seize his person. Furthermore, there were no suspicious bulges on Mr. Byran-estrada's person nor did Mr. Byran-estrada possess any contraband in open view. Nonetheless, he was seized and then searched. Since defendant's conduct can only be described as innocent, there was no probable cause for defendant's arrest. See Dunaway v. New York, 442 U.S. 200 (1979); Terry v. Ohio, 392 U.S. 1 (1968); People v. DeBour, 40 N.Y.2d 210 (1976); People v. Carrasquillo, 54 N.Y.2d 248, 254 (1981). Under the exclusionary rule enunciated in Mapp v. Ohio, 367 U.S. 643 (1961), the prosecution is therefore prohibited from using as evidence anything which was recovered as a direct or indirect fruit of defendant's illegal search and seizure. See also Wong Sun v. United States, 371 U.S. 471 (1963).

36. Mr. Byran-estrada therefore, moves for an order granting suppression of the physical evidence that was seized or in the alternative for a hearing to determine the propriety of defendant's arrest and the subsequent seizure of the alleged property.

37. Defendant also requests that the District Attorney be ordered to produce at any hearing any and all property seized from the defendant, so that the defendant will have a full and ample opportunity to cross-examine all witnesses without delay. See People v. Robinson, 118 A.D.2d 516 (1st Dept. 1986).



## SUPPRESSION OF IDENTIFICATION TESTIMONY

~~38.  The District Attorney has served notice pursuant to C.P.L. §710.30(1)(b) of~~ their intention to introduce at trial testimony regarding a prior identification of the defendant.

39.  The defendant now moves to suppress any and all testimony regarding any prior identification of the defendant, as well as all in-court identification testimony, on the grounds that the prior identification procedure violated the defendant's rights under the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article I, §12 of the New York State Constitution.

40.  The police did not have probable cause to arrest Mr. Byran-estrada.  On November 8, 2007, Mr. Byran-estrada was in the vicinity of 625 West 156th Street minding his own business.  At that time, Mr. Byran-estrada was summarily seized by police for no apparent reason.  Mr. Byran-estrada specifically denies the allegations that at any time did he commit the alleged crime in the complaint.  Mr. Byran-estrada avers that at no time on November 8, 2007 did he engage in any unlawful conduct or contact with another person.  There was nothing about Mr. Byran-estrada's appearance or behavior that day that would have given the police reason to approach him let alone forcibly seize his person.  Furthermore, there were no suspicious bulges on Mr. Byran-estrada's person nor did Mr. Byran-estrada possess any contraband in open view.  Nonetheless, he was seized and immediately searched.  Thereafter, Mr. Byran-estrada was held in an identification procedure wherein he was identified by an alleged eyewitnesses.  Since the identification was the direct result of defendant's illegal arrest, the evidence concerning the identification should be suppressed as the "fruit of the poisonous tree."  People v. Gruden, 86 N.Y. 159 (1995); People v. Acevedo, 176 A.D.

631 (1st Dep't 1991); Wong Sun v. New York, 371 U.S. 471 (1963); Dunaway v. New York, 422 U.S. 200 (1979).

41.  Because of the circumstances of defendant's identification, defendant contends that a hearing is required to determine whether any testimony concerning prior identification is admissible at trial. See People v. Blackmum, 100 A.D.2d 596 (1st Dep't 1985).

42.  If a hearing is ordered, defendant requests that all persons who identified defendant, or who were present at the time of the identification but did not identify defendant, be present at the hearing so they may be called as witnesses.


## MOTION TO PRECLUDE THE OFFERING OF EVIDENCE

43.  The prosecution is required to give the defendant notice of intent to offer evidence of statement or identification testimony within 15 days of arraignment, pursuant to C.P.L. § 710.30.  The defendant requests that any testimony concerning statement or identification for which proper notice has not been given be precluded, pursuant to C.P.L. § 710.30(3).  See also People v. O'Dohimty, 70 N.Y.2d 479 (1987); People v. Baughton, 70 N.Y.2d 854 (1987).

## SANDOVAL MOTION

44.  The defendant moves to preclude the prosecution from using at trial evidence of defendant's prior criminal convictions, all underlying bad acts, and all prior uncharged criminal, vicious, or immoral conduct.

45.  The defendant intends to testify in this manner.

46.  The defendant, therefore, moves to preclude the District Attorney from cross-examining the defendant at trial on any of the defendant's prior arrests or any uncharged

criminal, vicious, or immoral conduct that the prosecution may be aware of.  See People v. Sandoval, 34 N.Y.2d 371 (1974); C.P.L. §240.43.

47. The defendant's prior arrests and bad acts should be suppressed because their use on cross-examination would have no purpose other than to show that defendant has a propensity to commit crimes and, therefore, is likely to have committed the crimes charged in the accusatory instrument. People v. Schwartzman, 24 N.Y.2d 241(1969); People v. Shields, 58 A.D.2d 94 (1977), aff'd, 46 N.Y.2d 764 (1978).

## RESERVATION OF RIGHTS

The defendant respectfully requests the right to make any and all further motions as may be necessary based upon information and disclosures which may result from the granting of requests made in this motion. People v. Frigenti, 91 Misc.2d 139 (N.Y. Supp. 1977); C.P.L. §255.20(3).

The defendant reserves the right to be prosecuted only pursuant to legally sufficient misdemeanor information.  Mr. Byran-estrada does not waive that right by filing this motion. People v. Weinberg, 34 N.Y.2d 429 (1974).

WHEREFORE, the affiant respectfully requests this Court to grant the relief sought herein and reserve to defendant the right to amend or supplement this motion for such other and further relief as this Court may deem just and proper.

DATED:     NEW YORK, NEW YORK
           January 30, 2008


Eric S. Williams, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 42

---

THE PEOPLE OF THE STATE OF NEW YORK        : DEMAND TO PRODUCE

                            -against-                                    :

Andres Byran-estrada,                                     : Indictment No. 05863/07

                            Defendant.                          :

---

TO:    HON. ROBERT MORGENTHAU
       DISTRICT ATTORNEY OF NEW YORK COUNTY
       ASSISTANT DISTRICT ATTORNEY ASSIGNED

       Pursuant to C.P.L. §240.20, demand is hereby made that you supply or make

available to be undersigned the following:

       1.  All arguably relevant statements, admissions, and confessions, whether or not

the People to intend to offer them on their direct case, in the possession of the

prosecution or about which, by the exercise of due diligence, the prosecution could have

knowledge, made by the defendant to any other person, which have in any way been

recorded or summarized in writing.  The exact time, date and location each statement,

admission, and confession was made, and the names and addresses of all those present

when each statement, admission, and confession was made, and to whom it was made;

       2.  Any written report or document, or portion thereof, concerning a physical or

mental examination, or scientific test or experiment, relating to the criminal action or

proceeding which was made by, or at the request or direction of a public servant engaged

in law enforcement activity, or which was made by a person whom the prosecution

intends to call as a witness at trial, or which the People intend to introduce at trial;

       3.  Any photograph or drawing relating to the criminal action or proceeding which

was made or completed by a public servant engaged in law enforcement activity, or at the

request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the People intend to introduce at trial, including, but not limited to:

4. Disclosure of the existence of any item of a character described in paragraphs two and three, or which the People are aware and/or have in its possession, but which have a source other than a public servant engaged in law enforcement or person acting by his request, direction, etc.;

5. Any tapes or other electronic recordings including 911 tape, radio communications, and Sprint tapes which the prosecutor intends to introduce at trial for any purpose, irrespective of whether such recording was made during the course of the criminal transaction;

6. Any communication received by any law enforcement agency, regardless of its form, relating to the incident for which defendant was arrested. Indicate the form and weapon of the communication, the names and addresses of those who supplied the information, and the date, time, place and to whom such information was given.

7. The date, time and place of the offense charged, and of the arrest of the defendant;

8. The date, time and place that the defendant was taken into custody, if that information differs from that demanded in paragraph 7;

9. Provide the names, shield numbers and command of all law enforcement officers involved in the investigation of this case and/or arrest of the defendant. State which, if any, of these officers were on special assignments regarding this case. Explain the nature of such special assignments (i.e., undercover, "ghost,", etc.).

10.  A list and description of, and an opportunity to inspect, all property obtained ~~from defendant; including, but not limited to prerecorded buy money or contraband.~~

11.  A list and description of, and an opportunity to inspect, all property which the People intend to introduce against the defendant at trial;

12.  State whether there exist any co-conspirators or accomplice to crimes recited in the complaint, whether mentioned herein or not; and if so, their names and address or places of incarceration, and the Indictment numbers and current status of their cases. State whether and why any co-conspirators or accomplices have not been arrested and/or charged with the alleged crimes;

13.  State whether any person(s) referred to in paragraph 12 made any statement to any law enforcement official, or persons acting in concert with same, with reference to the complaint herein, the existence of which statement is, or by the exercise of due diligence could be, known to the District Attorney.  Provide the substance of such statements;

14.  State whether any witness for the prosecution was taking and/or to any degree was under the influence of alcohol and/or drugs at or near the time of the alleged crimes; if so, what was the type and amount of the alcohol and/or drug.  If the drug was prescribed by a doctor, what was the name and address of the doctor;

15.  State whether any person who the people intend to call as a witness has been subjected to hypnosis or other externally induced form of memory recall;

16.  State whether the District Attorney has reason to believe that any witness will not be available because of death, physical disability, mental infirmity, lengthy or permanent absence from the jurisdiction, inability to locate, or any other reason which

would preclude the presence of the witness at any future proceeding relating to the present complaint;

17.   Please state what, if any, audio or visual aids were used by any law enforcement personnel or agents thereof to view/record the defendant's conduct which is the subject of this information (i.e., binoculars with manufacturer, model and power, audio tape recorder, etc.).

18.   All item seized from the person of, or in close proximity to, the defendant at the time of his arrest or subsequent to it.  State exactly from where, when and by whom each item was seized and the circumstances of each seizure;

19.   The exact date, time and specific location of any and all searches of any premises, vehicles or other place that defendant owned, rented, visited or in which he had a proprietary.

20.   The name, shield numbers and commands of all law enforcement officials and the names and addresses of all civilians present during any search or seizure referred to in paragraphs 18 and 19 whether or not the District Attorney intends to call them as witnesses;

21.   State whether the defendant was advised of his constitutional rights at any time; if so, by whom, where, and how he was so advised;

22.   Copies of any waiver of his constitutional rights that defendant signed;

23.   Anything required to be disclosed, prior to the trial, to the defendant by the prosecutor, pursuant to the Constitution of the United States or the State of New York;

24.   Furnish defendant, now and on a continuing basis, all evidence, material, and information known to the prosecutor, or which by due diligence could be learned from other government agents or prospective witnesses in the case, which may tend to

exculpate the defendant, either by indication of innocence or by potential impeachment of a prosecution witness, within the meaning of Brady v. Maryland, 373 U.S. 83 (1963); People v. Rosario, 9 N.Y. 2d 286 (1961); and People v. Wright, 74 Misc. 2d 419 (1973), including, but not limited to:

a. Any and all police reports made in connection with this criminal action or proceeding, including, but not limited to, the Arrest Report (PD244-146), the Complaint Report (PD313-152), the Complaint Follow-Up Report (PD313-018), the Patrolman's Log (PD112-147), the Sprint Report, the Accident and Aided Card, Daily Activity Report, Buy Report, etc., and any property vouchers.

b. State the names, addresses (for attorney only) and dates of birth, if civilians, or shield numbers and commands, if law enforcement agents, of all witnesses to the alleged incident and/or the defendant's arrest. State whether the People intend to call each witness to testify at trial.

c. State whether any of the civilian witnesses that the People intend to call at trial have criminal, psychiatric and/or drug/alcohol abuse histories. If so, provide details, including NYSID Sheets.

d. State whether there are any deals, understandings, agreements and/or promises between the prosecution and any other individual as to the nature and extent of prosecution, sentence type or length, as required by Giglio v. United States, 405 U.S. 150.

All the foregoing requests (pars.1-24), are not limited to items which the prosecutor intends to offer into evidence, but rather include all tangible material within the possession, custody, and control of the prosecution, which may be material to the preparation of a defense.

DEMAND is further made that the refusal to supply any of the demanded material be made in writing setting forth the grounds for such refusal and that a copy of such writing be served upon the undersigned and filed with the Court within fifteen (15) days from receipt by you of this Demand.

DATED:       New York, NEW YORK
             January 30, 2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 42

---

THE PEOPLE OF THE STATE OF NEW YORK    : REQUEST FOR A BILL
                                    OF PARTICULARS

              -against-                        : Indictment No. 05863/07

Andres Byran-estrada,
                 Defendant.                   :

---

TO:   HON. ROBERT MORGENTHAU
        DISTRICT ATTORNEY OF NEW YORK COUNTY
        ASSISTANT DISTRICT ATTORNEY ASSIGNED

      The defendant has been charged, under Indictment Number 05863/07, Rape in the

First Degree, P.L. §130.35(1); Assault in the Second Degree, P.L. 120.05(6), and Sexual

Abuse in the First Degree, P.L. §130.65(1). He has entered a plea of "Not Guilty."

      In order for the defendant to properly defend against the charges in the indictment

it is necessary and essential to the defense that the specific items of factual information

not recited in the information, including the substance of defendant's conduct, be

supplied to defense counsel. This is made particularly necessary because the accusatory

instrument, heretofore presented, with regard to certain material allegations, is lacking in

factual detail and conclusory in nature, and because no preliminary hearing was held.

Pursuant to C.P.L. §200.95 a "Request for a Bill of Particulars" is hereby made

requesting the following :

      1. The date, time and location the defendant allegedly committed the counts in

the information.

      2. The date, time and location of the arrest of the defendant.

      3. The date, time and location that defendant was identified as the perpetrator of

the alleged crime.

4. The specific acts allegedly attributable to the defendant in the information which make him guilty of rape in the First Degree.

5. With respect to the count of Rape in the First Degree, set forth with particularity:

      a. Set forth with particularity, the section of the Penal Law under which defendant is being prosecuted.

      b. The complainant's sex, age and date of birth.

      c. The nature of the compulsion used.

      d. The date(s), time(s), place(s), location(s) where the complainant was allegedly raped.

      e. The nature of the complainant's inability to consent by reason of being physically helpless.

      f. Whether the complainant is less than eleven years old.

6. With respect to the charge of Sexual Abuse in the 1st Degree, state:

      a. The names and addresses of the persons allegedly abused.

      b. Facts demonstrating that the alleged sexual contact engaged in was not consensual.

      c. Facts demonstrating that the alleged sexual contact was by forcible compulsion.

      d. The nature of the sexual contact.

      e. State whether or not the complainant was incapable of consent by reason of being physically helpless.

      f. State the age of the complainant.

7. The time and place at which the defendant is alleged to have committed the crime if different from the time and place of his seizure and arrest.

8. State whether the People intend to prove that defendant acted as a principle or ~~accomplice or both. If the People intend to prove that defendant acted with another,~~ provide the following:

    a.    The name(s), address(es), place(s) of incarceration, and dates of birth of any persons who allegedly acting in concert with the defendant in committing the crimes charged;

    b.    The specific acts attributable to those who allegedly acted in concert with defendant;

    c.    The property of every nature and description taken from the person of, or in the immediate proximity of, any accomplice or other principal to the alleged crimes. State exactly from where such property was seized. Included in this request is the Indictment number and/or indictment number and the name of defendant in any companion or related case;

    d.    State whether and why any individual who allegedly acted in concert with the defendant has not been arrested and/or has not been charged with his participation in the crimes charged.

9. The property of every nature and description taken from the person of, or in immediate proximity of, the defendant and co-defendant. State exactly from where and by whom such property was seized and whether seized pursuant to a warrant. Also state the location at which each seizure took place;

10. The names, addresses and shield numbers of all law enforcement officials who participated in the arrest of defendant; either prior, during or subsequent to the arrest; including, but not limited to: undercover, 'ghost,'', etc.

11. Request is further made that any refusal to supply any of the requested material be made in writing stating the reason for refusal and setting forth the grounds for such refusal as fully as possible as required by C.P.L. §200.95, subd. 4. It is requested that a copy of such writing be served upon the undersigned and filed with the court within fifteen (15) days from receipt by you of this Request for a Bill of Particulars.

DATED:      NEW YORK, NEW YORK
            January 30, 2008

                                    Respectfully yours,
                                    Eric S. Williams, Esq.
                                    Attorney for Defendant
                                    The Legal Aid Society
                                    49 Thomas Street
                                    New York, New York 10013

TO:    ROBERT MORGENTHAU
       District Attorney
       New York County

       ALAN J. MURPHY
       Clerk, Supreme Court
       New York County